Good morning, Your Honors. May it please the Court, Quinn Denver for Russell Jones. I am going to address my remarks later to try to persuade you that you should find a Batson violation on the record before you. But there is, if you should not feel so inclined, I would ask you to grant a motion to remand, which is pending before you. It was referred to you by the motions panel. That motion asks that the case be remanded to the district court so that the record could be expanded with the jury questionnaires for the sitting jurors, the white jurors. Counsel, were those questionnaires before the State court? They were before the State court, trial court, not the appellate court. Not the appellate court. So can we do that under the Supreme Court's recent jurisprudence? Yes, Your Honor. I think Jamerson v. Russell, which I cited, makes it clear that Pinholzer itself concluded review only if evidence that was not revealed in any State court proceeding. The court emphasized any. In that case, the court said that a Federal court could consider DMV photographs of the sitting jurors to determine race, even though because the trial court could see those people in person, even though the State appellate court did not have either them in person or the DMV photos. Does that put us, then, in the awkward position of reviewing a State court judgment on grounds on which the State court couldn't have ruled because it didn't have that evidence in the record before it? I don't think so, Your Honor, because it's not – it's not – it may be awkward, but it isn't – it isn't in any way – it is a full presentation to you of the comparative juror analysis that should have been done by the State court and was not done by that. You need to be able to look at those questionnaires or let me look at them to persuade you that there's a disparate use of these reasons when it's a minority juror or a white juror. You have said in Kessler v. Camber that comparative jurors and juror analysis is part of the Batson evaluation. We can't do that on this present record. I think we can, but to do it fully, you need to have that before you. And as Jamerson v. Runnell says, that you can certainly bring it over. Penholster is not a problem. Well, so they were in the record when the jury was selected, is that right? Correct. And then they're not – they weren't? No. They were then sealed and are now part of the trial court record right now. Correct. They could have been augmented. But they were never before – they were never before – they were never part of the record on appeal? No. No, they weren't. They could have been, Your Honor, they could have been augmented up there. The court could have done it on its own motion, but it didn't feel that it could do comparative juror analysis. It had no reason to. They also could have been augmented on the motion of the defendant, but they had already denied another motion for augmentation on the basis that they were not going to do comparative juror analysis. So that court deprived itself of these. And Jamerson says the fact that it wasn't before the State appellate court, as long as it was before the trial court, Penholster doesn't apply. So what did the trial judge do wrong? What did the trial judge do wrong, Your Honor? He did two – well, first of all, I want to say that I think that we've made the claim to the AEDPA deference, because the State appellate court decision was contrary to clearly established Supreme Court law in two respects. One is they refused to do comparative juror analysis. But they weren't asked to. As I understand it, no one – this wasn't even requested for another two years. Oh, no. They were asked to do comparative juror analysis in the State appellate court.   I'm asking about the trial judge, though. The trial judge wasn't asked. That's correct, Your Honor. But there is a – you have held in the Ninth Circuit that you have to do comparative juror analysis even if it was not asked for or done in the State court. And what's the case establishing that? I don't think it's Kessler. I don't know if it is. But I – and what's the Supreme Court case that obligates the State court to conduct comparative juror analysis or suffer the consequences in our court? What's the obligation of the court that it must conduct comparative juror analysis? No, I think the question is that this Court must do it. When presented with a non-Federal claim. Well, that's the best – that may be the best tool for us to review this if we think we have to get that far. But both the district court here and the California courts thought that there were enough – they only had two jurors that were excluded. Correct. And thought that there was sufficient evidence in the record to say, yeah, these are – this is a for cause – basically a for cause dismissal. It's a perfectly appropriate use of a peremptory. Well, the district court felt that there should have been comparative juror analysis and that the State courts were wrong in refusing to do so. They just said they were not persuaded by it because they didn't have the full record before them. And that's why I'm suggesting that we ought to have the full record. And to – the Court has said and – that defendant is entitled to use comparative juror analysis to show a Batson error, to support a Batson claim. In order to do that, you need more than just the voir dire and the questionnaires of the two minority jurors. You need to be able to see whether the – whether the prosecutor's reasons that he struck the minority jurors were also applied to the white jurors. The questionnaires were available to all counsel, though, back before the trial judge. The questionnaires were available to all counsel. They were available. They had them. They were there. The fellow had them. Correct. Right. So there was – I mean, everyone had a fair shot at it back then. And for some reason, it wasn't – I just – I'm looking at maybe at the trial judge's perspective. Well, Your Honor, the trial judge may have – it was not requested by counsel. Right. At the trial level. It was at the appellate level. And this Court has said that even if it's not requested in State court, the Federal court will do it. It may do it. I can find that. It is able to do it. It may do it. No, you have a crowded calendar. Otherwise, I'd go through my briefing that shows you. You do have some evidence in here about other jurors. We have the voir dire. Right. And so you – I mean, you have tried to make some comparative analysis. Based on what little we had there. And unfortunately – And so the question is, have you got – have you got enough there to establish a Batson violation? And if not, then you're telling us – then all you're telling us is this is a fishing expedition that trial counsel did not request, that the trial judge did not conduct. Nobody asked the California court of appeal to do it. And so now you're asking us to do it. Did ask the California court of appeal to do it, and they refused to do it. That's the truth of it. And the fact of the matter is, what I've been able to do so far is to take what was available. Let me stop you there. Okay. So your client did ask the California court of appeal to conduct a comparative analysis. Absolutely. But nobody bothered to put the questionnaires in the record? They tried to augment something else from – into the record. And the California court of appeal said, we will not do that, because we do not do comparative juror analysis. No. I thought they said they would. So it would have been a futile gesture. I may be wrong, but I thought the court of appeal said that the explanations were facially valid. And I'm not sure that I understand the law to be that if the explanation is neutral, that there still has to be a comparative juror analysis. I don't think you can determine whether something is totally racially neutral until you see whether the statement, the stated reason of the prosecutor is being applied evenly to minority and nonminority people. And the Court has done that in many cases. In the Babson cases, it looks at that. They say, well, he said this. Let's see if that is a pretext for race. I mean, that's the basic question. Well, but that means that there always has to be a comparative juror analysis when there's a Babson challenge. I think the defendant is entitled to make a comparative to present to you a comparative juror analysis in order to persuade you that there was a Babson violation. Correct. And I don't think you'll find any case that has to the contrary. In fact, there's cases that say. Was the trial court supposed to have conducted a comparative analysis? Was it supposed to have stopped the trial when there was a Wheeler motion and said stop, let's go back in the back room? That is not an argument, Your Honor. The Court has said before that the fact it wasn't requested or done in State court does not mean that this Court and a Federal court will not do a comparative juror analysis. This is not a question of forfeiture, waiver, or something like this. This is a claim that was made of a Sixth Amendment violation. We have brought it properly before the Federal court. We want a full record for the court to look at it and do the comparative juror analysis that the Supreme Court and this Court said is part of the Babson evaluation. That's all. Are you criticizing the trial judge or not? I'm trying to imagine what you're saying. I'm going to criticize you. I'm representing a client. I think they blew this call, and I will address why they blew the call in a second if I have a second left. You're actually down to that second. Well, I do want to say this, because it's important. In preparing for argument, I look back at two cases we had cited and we hadn't dealt with the facts of. And what I want to tell you is there are three cases, two by this Court and one by the United States Supreme Court, where the Court found that when a prosecutor stated that he or she was throwing a minority juror off because of their relative's convictions, they were found to be pretexts. One of them is Kessler v. Canberra. I'm sure the Court is aware of that. The other one, which I briefed at great length, is Green v. Lamarck. And then there were two jurors in Miller L. v. Dredke. And I can tell you, in every one of those cases, they said, if, because a person has a relative who has a conviction, that is no reason to doubt their ability when they say, as they did here, I thought they were treated fairly. I have no complaint at all. My son is a crime. But those cases also really get into the weeds in terms of what was the conviction for, what was the – how close is the relationship? Was there a relationship? Were they prosecuted by this office that's prosecuting the office? I don't believe that's correct, Your Honor. I just went over those recently in preparing for argument. I don't think that they made that point at all. Well, I wrote Kessler, so I thought that's what it said. Well, I read it more recently than you have. And I think the other thing you said in Kessler and they said in those cases is, look, in comparative juror analysis, they said two things. One is, if the prosecutor was worried about those convictions, then why didn't he ask the jurors about them? And why did he not accept their – if he wasn't going to accept their assurances that they were impartial, he should have questioned about it if it was a real concern. The second thing they said in some of those cases is, he didn't do the same with white jurors. When they had relatives with convictions, he didn't ask them any questions. He accepted them as jurors. That's the comparative juror analysis. And, again, we do have some of that here, because you do have a white juror who had a relative that was – Actually, Your Honor, that was a juror who the prosecutor would have accepted, but ultimately was dismissed. Right. Didn't serve – actually didn't serve on the jury bench, but had a DUI, had a relative with a DUI. Didn't ask any questions about it, would have accepted her assurance that she was impartial, did not accept the assurances of the two black jurors that they were. Both of those – both of the jurors that were excluded also had other things besides relatives with – That's correct. We had an – we had the incident in Elk Grove and the – there was somebody else. I don't remember what the other one was, but – That's correct, Your Honor. And one of them was that one of the – one of the jurors said, Mrs. H.T., that she – it appeared to her that people of color ended up serving a lot more than other groups for the same crime. First of all, the district attorney never questioned her about that. Secondly, the statement is true. I've cited you the statistics from the Sentencing Commission and everything else. Third, the – I've cited you where 8 out of 10 African-Americans believe that, with good reason, because it is true. That can't be a reason for throwing African-Americans out because they recognize the racial disparity when they say it won't affect them. They said they could be fair, and they said that they thought their own – their own relatives, African-Americans presumably, were treated fairly by the system. That's just a fact of life. I don't think you can throw black people off because they happen to know what's true. And you certainly can't do it without questioning them about, well, what do you mean by that? Is that going to affect you? She talked about disparity in sentencing. Sentencing was not going to be before this. This isn't a capital case. There is no sentencing question here. So – We've taken you way over your time, counsel. I'm sorry. And we thank you very much. Well, I appreciate the extra time. Thank you. I think I get no rebuttal. Mr. Dendra, I am going to allow you one minute for rebuttal. All right. Mr. Riley? Good morning. May it please the Court, Justin Riley on behalf of the Warden. I'd like to go to the expansion of the record issue first, unless the Court wishes otherwise. Essentially, appellate asks for discovery. And the transcript of the voir dire evidences two reasons why discovery here is unavailable. The first is the transcript itself. The voir dire is entitled the augmented reporter's transcript. There is also an augmented clerk's transcript. Appellant on direct appeal requested that the Court of Appeal augment the record on appeal to include the voir dire and various documents that he used to argue comparative juror analysis. He knew the process for augmenting the record on appeal. He used the process for augmenting the record on appeal. He ignored the juror questionnaires. He's at fault for failing to use this evidence or seek this evidence earlier. Second, the content of the voir dire proceedings shows why he probably ignored the questionnaires when he sought to augment the record. The content of the voir dire proceedings includes discussion of run-ins with law enforcement, with family history and the like. If anything were in the questionnaires that needed to be asked, both the defense attorney and the prosecutor did ask during the voir dire proceedings, and you'll see throughout the proceedings that they discussed with many jurors run-ins with law enforcement, et cetera. So not only is Appellant at fault for failing to seek this evidence earlier, the evidence is useless. It's just a fishing expedition here. He hasn't made the showing that he is entitled to additional evidence. As to the merits, I would note briefly that both jurors H.T. and juror D.Y. had family members who were convicted of manslaughter. Remember, this was a murder case, and they had family members convicted of manslaughter. Not only did they have this, and no other juror did, but each of the jurors had an additional factor. H.T. Counsel, do we know that without looking at those questionnaires? Can we be confident of that? Confident of what? That no other juror had a relative who was convicted of manslaughter. No other juror admitted to having a relative convicted of manslaughter, and I believe four or five jurors that Appellant highlighted and occur in the questionnaires admitted to various run-ins with law enforcement. They were all excused, all of them. I believe there was D.Y., as Your Honor noted. There was prospective juror number six whose husband was arrested for solicitation of a prostitute, excused. There was a few others, and they were all excused. This actually supports vis-à-vis a comparative juror analysis that the prosecutor did not want any jurors on his panel that had any run-ins with law enforcement. They were all excused. There were specific and pointed questions during voir dire. Has anybody had any run-ins with law enforcement, either negative or positive, et cetera? These are all in the voir dire proceedings. The voir dire proceedings is a summary and a real-time account of what was in the questionnaires and what the prospective jurors had to say about those questionnaires, the information they placed in the questionnaires. When it came over to Federal court, what did the magistrate judge do? I was a little confused about that. The magistrate went through all three prongs, and as we know, the State appellate court stopped at prong one, as did the trial court. Fortunately, the record was complete enough that the district court could go through all three prongs. We had the augmented reporter's transcript of the voir dire proceedings. We had the juror questionnaires of H.T. and D.Y., and we had a few factual findings from the trial court. So the district court went through and just analyzed all three prongs. Based on what was said in voir dire and the limited questionnaires. As well as the Batson hearing, sure. Okay. So the district court is an excellent road map, after fleshing out the facts in detail, is an excellent road map for how to deny this claim using comparative juror analysis and factual determinations, et cetera. I'd love to answer any more questions, but I'm prepared to submit. I don't think there are any more questions. Thank you, Mr. Riley. Mr. Denver. Well, I'd be glad to answer any questions about the motion to remand first. You can't fault them for not augmenting the record. When these questionnaires, when the ---- When you say them, who do you mean? You can't fault the appellate counsel, defense appellate counsel, for not augmenting the record with these sealed questionnaires when they tried to bring other information before the court of appeal to do comparative juror analysis and were told, denied. We don't do that under California law. And the other thing is that's important about that ---- I'm sorry. That would suggest that they were going to do the whole thing sort of seriatim. And that's not usually the way you deal with the court of appeals if you're asking for them to expand the record. So it suggests that they really did not ask for the questionnaires. They probably had no intention of asking for the questionnaires. They didn't ask for the questionnaires, but they asked for something else and were turned down. Right. So it was futile anyway. Plus, Jamerson says it doesn't make any difference. I mean, that's the other thing. We have a Ninth Circuit case that says it was before the trial court. It doesn't make any difference before the appellate court. And then on the question of the pretext, I'd ask the Court to look at, consider this again. You have African-American jurors. They have convictions. There's going to be a lot more African-American jurors with relatives who have convictions because we all know the facts of the matter. And these people say it's not going to affect me. The one lady volunteered. My son did the crime. He had to be punished. The other, she said about her brother, I didn't know anything about it, but it won't affect me. The other lady said the sentencing of my cousin was based on the crime and she turned herself in. Now, those aren't people who have some gripe about the system. We're going to bring something into it. And I think that, and then the idea that you can throw an African-American juror off because they happen to know the truth of our criminal justice system, that's just not right. Thank you. We thank both counsel for the argument. The next case on the oral argument calendar is United States v. Franco Reyes.
judges: Beistline, Schroeder, Bybee